Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 79 C 5160 | **DATE** | 5/14/2002 |
| **CASE TITLE** | Lillian Tauber vs. City of Chicago | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Order. Lewises' motion for reinstatement and redefinition is denied. (792-2) This Court expresses its thanks to appointed counsel Joseph Ziccardi for his efforts on Lewises' behalf.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | MAY 15 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 803 |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | 5/14/2002 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| SN | courtroom deputy's initials | | SN | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LILLIAN TAUBER, et al.,          )
                                 )
                    Plaintiffs,  )
                                 )
          v.                     )          No.  79 C 5160
                                 )
CITY OF CHICAGO, et al.,         )
                                 )
                    Defendants.  )

<u>MEMORANDUM ORDER</u>

Anna Lewis ("Anna") was a member of the successful class of
plaintiffs in this action against the City of Chicago ("City").
Following this Court's June 1993 issuance of Findings of Fact and
Conclusions of Law that granted enforcement of the rights of Anna
and other claimants under the Consent Decree that had been
entered on April 4, 1983 by this Court's predecessor in the case,
Honorable Stanley Roszkowski, this Court issued its Final
Judgment and Order for Plaintiff Anna Lewis ("Judgment Order," a
photocopy of which is attached as Ex. 1 to this memorandum
order).

Lewis was indeed rehired by the City in 1993, and she later
went on disability and ultimately died on November 21, 2001.  Now
her sons Marcus and Martin Lewis (collectively "Lewises") have
moved to obtain certain additional relief to which they claim
Anna was entitled.[1]  Both Lewises and City have submitted

_____

[1] City has properly questioned Lewises' standing to proceed
here, pointing out that no proper substitution of parties has
taken place because of Anna's death.  Although no probate estate

memoranda addressing the claims advanced by Lewises for:

    1.  payment of the sum of $7,395, which is equal to all but a minor fraction of the contributions that Anna would have been required to make to the Municipal Employees' Annuity and Benefit Fund of Chicago ("Fund") if she had been employed by City from October 1, 1988 through August 26, 1993 (although such contributions were never in fact made by Anna herself); and

    2.  payment of $25,000 in life insurance from Bankers Life Insurance Company ("Bankers Life")--in that respect, see Lewises' Mem. 3 ¶6 and their Mem. Ex. E (a copy of which is attached as Ex. 2 to this memorandum order) and City's Mem. 4 n.6 and its Mem. Ex. C (a copy of which is attached as Ex. 3 to this memorandum order).

This memorandum order addresses both of those claims.

As for the pension-related claim, since the date of Anna's death her sons have already received $23,735.42 as a refund of the portion of her contributions to Fund that amounted to 8% of her salary during the time that she actually paid contributions, plus statutory interest (such a refund was called for by, and

---

has been opened for Anna, nor has either Martin or Marcus been appointed to administer her estate, they have currently provided an affidavit of heirship establishing that they are Anna's sole heirs and successors. This Court therefore orders that Lewises be substituted for Anna for all purposes in this action--see Fed. R. Civ. P. 25(a).

made pursuant to, 40 ILCS 5/8-170).[2]  But for the period from

October 1, 1988 through August 1, 1993--a period during which

Anna was not actually employed--Fund agreed to give Anna personal

service credit only _if_ she made her required employee

contributions that would have aggregated the $7,395 figure, and

nothing in the Judgment Order or in any other document or

provision of law has created any greater entitlement on Anna's

part.[3]  Because Anna had provided Fund with only $1,150 of that

amount before her death (in the form of deductions from the

payment of her disability benefits after June 30, 2001), that

$1,150 amount was also refunded by Fund to Lewises.

It is thus difficult to see any even arguably reasoned basis

for Lewises' first claim.  If Anna had in fact been employed by

City during the period at issue, _she_ would have been required to

make those contributions--and by definition only those

contributions by her could have been the source of a statutory

_refund_.  How then can the non-employed Anna serve as the source

of a "refund" to the heirs of the non-contributing Anna?

To turn to the $25,000 life insurance claim, even though

------

[2]  Although Anna's total contributions to Fund had actually
been made at the rate of 8-1/2% of her salary, the remaining 1/2%
was nonrefundable pursuant to 40 ILCS 5/8-137(b).

[3]  With Judgment Order ¶2 specifying Anna's damages as
$87,000, an amount that was concededly paid in full, it would
distort the relationship between the parties to require City to
pay not only that amount but also _Anna's_ share of any
contributions required to be made to Fund.

3

City did not believe Lewises were still advancing such a claim (see City Mem. 4 n.6), out of caution it attached the affidavit from Bankers Life that is Ex. 3 to this memorandum order. Paragraphs 3 through 5 of that affidavit, as well as the Bankers Life explanatory letter (Ex. 2 to this memorandum order), have explained that Anna never took the necessary steps to obtain optional life insurance from Bankers Life after she left active service with City.

Because Anna thus had no arguable direct claim to such continued policy coverage (so that Lewises have no arguable direct claim to any policy proceeds), Lewises have been compelled to argue instead that the $25,000 figure somehow represents damages recoverable "[d]ue to the City's failure to notify [Anna] that she had to continue premium payments on her own" (Lewises' Mem. 3). But quite apart from Lewises' failure to provide any evidence to support that assertion as to lack of notice (a failure that would alone call for denial of Lewises' motion), there is no showing of any obligation on City's part to have given Anna such a notice.[4] In sum, Lewises' second contention is unsuccessful as well.

This Court expresses its thanks to appointed counsel Joseph

---

[4] Anna's situation was not one coming within the purview of COBRA, which provides for the continuation of individual coverage under group health plans established by an employer (see 29 U.S.C. §§1161 and 1163).

Ziccardi for his efforts on Lewises' behalf.  Attorney Ziccardi

has put the best face possible on the contentions that Lewises

had originally advanced pro se, and the failure of those

contentions reflected in this memorandum order is for lack of

merit and not for lack of effort.

_____

Milton I. Shadur
Senior United States District Judge

Date:  May 14, 2002

5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LILLIAN S. TAUBER, et al.,          )
                                    )
            Plaintiffs,             )
                                    )       No. 79 C 5160
        vs.                         )
                                    )       Judge Shadur
THE CITY OF CHICAGO, et al.,        )
                                    )
            Defendants.             )

FINAL JUDGMENT AND ORDER FOR
PLAINTIFF ANNA LEWIS

The Court having found Defendant City of Chicago
("City") liable to Plaintiff Anna Lewis ("Lewis"), and City and
Lewis (collectively the "Parties") having reached a settlement
regarding the amount and nature of damages to which Lewis is
entitled, and the Court being fully advised of said settlement
regarding damages, it is hereby ordered:

        1.    The Court has jurisdiction over the parties and
the subject matter of this case and has jurisdiction to enter
this Judgment.

        2.    Judgment is hereby entered against City and in
favor of Lewis in the amount of $87,000 in damages.  Lewis is to
be appointed to the position of Human Services Worker II,
Grade 10, in the Department of Human Services at a current annual
salary of $25,716.  Lewis shall be credited with twelve (12) paid
sick days and shall receive a continuous service date of
October 1, 1988 (the date of breach) for all purposes related to
her employment with City, including for purposes of Article 12 of
the AFSCME Collective Bargaining Agreement.  For purposes of



EXHIBIT

B

Ex. 1

determining eligibility for longevity pay increases as provided in the AFSCME Collective Bargaining Agreement, Lewis will be deemed to have satisfied the one-year service requirement at the top base rate upon attainment of six years of continuous service from the date of October 1, 1988. Pursuant to said stipulation between the Parties, Lewis shall also receive her salary for the days of Friday, July 23, 1993 and Monday, July 26, 1993.

3. This judgment is entered without waiver of City's right to appeal the issue of City's liability to Lewis.

4. The monetary portion of this Judgment against City will bear interest from July 28, 1993 until satisfied in full at the rate of 6% per year, as provided by the Illinois Code of Civil Procedure (735 ILCS 5/2-1303).

5. The issue of attorneys' fees and costs pursuant to this Courts Memorandum Opinion and Order dated June 11, 1993 and pursuant to 42 U.S.C. §1988, Rule 11, or other applicable fee statute will be decided at a future date in accordance with the Court's prior instructions.

6. The Court expressly determines, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and directs that this Judgment be entered now. See National Metalcrafters v. McNeil, 784 F.2d 817, 821 (7th Cir. 1986).

DATED: _Aug. 26, 1993_

_Milton Shadur_
JUDGE MILTON I. SHADUR

January 18, 2001

Marcus and Martin Lewis
7821 S. Rhodes Ave:
Chicago, IL 60619

RE:    Anna A. Lewis, deceased
       Group Policy 1802    City of Chicago

Dear Sirs:

We're sorry to hear the sad news. Please accept our condolences.

Based on the information provided by the City of Chicago, Mrs. Lewis was not actively at work at the time of her death. The last date the premiums were paid for her Group Life Insurance Policy was December 31, 2000.

The policy states, "The Basic Life Insurance of an Individual shall terminate on the last day of active employment, except while an Individual is absent on account of sickness or injury active service shall be deemed to continue until premium payments for such Individual by the Policyholder are discontinued". So, in this case Mrs. Lewis's Basic Group Life Insurance Coverage is considered terminated as of December 31, 2000.

Mrs. Lewis passed away on November 21, 2001. Since the coverage was not in effect at that time, the policy will not allow us to pay benefits. I'm sorry that we were not able to assist you in this case.

Sincerely,

Linda Oquendo
Group Benefits Department

**EXHIBIT**

E

EX. 2

ANKERS LIFE AND CASUALTY COMPANY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LILLIAN S. TAUBER, et al )
)
Plaintiffs, )
)           No. 79 C 5160
v. )
)           Judge Shadur
THE CITY OF CHICAGO, )
)
Defendant. )

## AFFIDAVIT

Comes now the Affiant, CYNDI JUNGKUNTZ, being first duly sworn on oath, states as follows:

1. I am a Supervisor of Eligibility in the Group Administration Department of Bankers Life and Casualty Company and have held that position for eight years. As a Supervisor of Eligibility in the Group Administration Department of Bankers Life and Casualty, I have responsibility for administering the group insurance program for the City of Chicago, including determining eligibility, processing deductions, and issuing certificates of insurance.

2. Bankers Life and Casualty Company provides life insurance coverage for certain City of Chicago employees under Master Group Policy No. 1802 issued by Bankers Life and Casualty Company to the City of Chicago. The insurance coverage includes Basic life insurance and Optional life insurance for those employees of the City of Chicago who make a written request for Optional life insurance on forms provided by Bankers Life and Casualty Company and for whom payroll deductions are made for the required contributions.

3. I have reviewed the records of Bankers Life and Casualty Company which records have been prepared and maintained by Bankers Life in the ordinary course of its business. Those records reveal that Anna Lewis, Social Security No. 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, failed to submit a written request for Optional life insurance within 31 days after she became eligible for insurance under Group Policy No. 1802. Consequently, Optional insurance could only be issued to Anna Lewis upon her submission of evidence of insurability. Anna Lewis failed to submit evidence of her insurability and, therefore, Optional

insurance for Anna Lewis never became effective.

4.  Under the terms of Group Policy No. 1802, when an individual
    is on an authorized leave of absence granted by the City of
    Chicago for a non-duty related disability, the Basic life
    insurance of the employee may be continued for a period not to
    exceed four months by the employee making the required premium
    payments to Bankers Life and Casualty Company within 31 days
    from the date the Basic insurance would otherwise have ended,
    that is, on the last day of the employee's active service.

5.  A review of the records of Bankers Life and Casualty Company
    reveals that Anna Lewis did not make any premium payments for
    her Basic life insurance coverage subsequent to her last day
    of active service.

6.  I would testify to the aforementioned in a court of law if
    called upon to do so.

7.  Further, Affiant sayeth not.


<u>5/3/02</u>
Date

<u>Cyndi Jungkuntz</u>
CYNDI JUNGKUNTZ


Subscribed and sworn to before me
this __3rd__ day of __May__,
2002.

_____
Notary Public
My commission expires: __February 8, 2004__

OFFICIAL SEAL
EDWARD J MCNAMARA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/08/04


EJM:lms

-2-